All right, let's take up our first case on the 10 o'clock call, Snyder v. Rooksby. Argument for the appellant. Please proceed, Justice. Thank you, Your Honor. May it please the Court, I'm Chris Petry, and I represent the appellant, Robert Rooksby. The appellate, Gregory Snyder, sued Rooksby for, among other things, a breach of fiduciary duty seeking money damages. Snyder also filed for injunctivity, seeking an order that Rooksby be enjoined from using half the proceeds that he obtained from the alleged breach of fiduciary duty, and that he deposit half of the proceeds from the alleged breach of fiduciary duty with the Court. The Court granted that injunction. This is an appeal of the granting of that injunction. And as I will explain, the granting of that injunction was erroneous. That brings me to the factual background of the case. Given the issues on appeal, it's not necessary to state the facts in great detail. Rooksby and Snyder were business partners in an LLC called Carbon Recovery. Carbon Recovery's business model was to obtain abandoned coal from coal storage companies, process it, and blend the coal so it met specific sales criteria, and then sell it. Their buyer was a company called Southern Illinois Power Cooperative. A dispute arose between Rooksby and Snyder as to the operation of Carbon Recovery, and Snyder wrote Rooksby an email on May 21, 2015, telling him Carbon Recovery would not be making any payments to anyone except to Snyder, meaning that there would be no further payments to suppliers or compensation for Rooksby. So Rooksby thus began dealing in coal on his own account, specifically contracting with Peabody Coal, a company Carbon Recovery had not dealt with. Snyder became aware of Rooksby's dealings and sued him for breach of fiduciary duty, essentially alleging that Rooksby was usurping corporate opportunities of Carbon Recovery. As part of the lawsuit, Snyder also sought an injunction ordering that Rooksby be enjoined from using 50 percent of the net sales proceeds of his sale of coal from May 21, 2015 forward, which was the date that Snyder wrote the email, and that he deposit 50 percent of the same into the court. The court granted the injunction, which brings me to the point that the injunction was erroneous, which brings me to the points on appeal. The first point is that the injunction is erroneous because Snyder has an adequate remedy at law, and thus there is no irreparable harm. Of course, it's horrible law that an injunction cannot issue if the move-on has an adequate remedy at law. Here, Snyder has an adequate remedy at law. His money damages claim for breach of fiduciary duty. Indeed, in his briefing below, Snyder even stated that he should, quote, not have to wait for a monetary award. But that's just the point. Because a monetary award is available, there is an adequate remedy at law. There is no irreparable harm. The mere passage of time from the point of the suit to any monetary award is not irreparable harm. And that makes this injunction essentially an equitable attachment, and Illinois law forbids equitable attachments. An equitable attachment is the enjoining of a defendant's control over property in his possession to satisfy a claim, not yet reduce the judgment. Was there any kind of allegation that this breach of fiduciary duty would somehow permanently damage the relationship with their buyer, Southern Illinois Power Cooperative? I don't believe so. I don't believe there was such an allegation. If that allegation was made, it certainly wasn't a focal point of the injunction hearing or in the briefing. In other words, any kind of allegation over and above you owe me money? There are things like an accounting, things like that. But as to an allegation about a specific permanent harm to a customer, I don't think there was. Even more, even if that were the allegation, the injunction forcing him to pay money into court would have no bearing to that allegation. I mean, that might support an injunction saying you can't go out and sell more coal, you can't go contact these people. But such an allegation would not create the need or the irreparable harm for an injunction to pay money into court. What did the injunction bar him from doing? The injunction barred him. The points of the appeal of the injunction that were appealed anyway, paragraph B and C of the injunction, prevented him from using the net proceeds of his sale of coal from May 21st, 2015, forward, and to deposit into the court those net sales proceeds. And the court eventually said, instead of depositing in me, you can deposit in your attorney's trust account. He was also enjoined from making any further sales to Southern Illinois Power Cooperative, except through carbon recovery. And we do not appeal that point of the injunction. I understand, but the point I'm trying to make here is it seems to me like the claim was more than just he owes me money. It's he's damaging our joint business's relationship or substituting himself for our joint business relationship with Southern Illinois Power Cooperative. I'm sorry. If I misstated, that was the only claim at issue. I apologize. My point was, this goes to your argument that he has an adequate remedy at law, money damages. And I'm saying, but what about the potential damage to this relationship with Southern Illinois Power Cooperative? We don't appeal that. We're not asking that he not be enjoined from having contact with Southern Illinois Power Cooperative. We're only appealing the injunction, paragraphs B and C, to the extent that they get a deposit money and he can't use the net sales proceeds. Yes. Okay. And also, there's no allegation that your client was insolvent or if this money got away, this is going to be gone. There's no evidence of insolvency. There's no finding of bankruptcy. The closest that it comes to that, there's an allegation that we're dissipating a corporate asset, which is just a fancy way of saying you're causing me money damage, which is one of the main points of my appeal. And to refresh my record, how much are we talking about here? The amount that was deposited is $10,000. We have a question. Okay. So, returning to the case law here, it does function as an equitable attachment. It may not be a great amount of money, but they're instructing Brooks that you can't use that money. The court's instructing Brooks that you can't use that money. You've got to deposit it with the court, and that's an equitable attachment. And as the court stated in Curti, Franz, and the other cases in my brief, the theory of taking away the control of property by means of an injunction for the purpose of anticipating a judgment, which may or may not thereafter be obtained by a litigant, is abhorrent. Abhorrent to the principles of equitable justice. And that's exactly what happened in this case. Brooks had property in his control, and it was taken away prior to judgment. Of course, there are many cases that deny injunctions when a plaintiff has a claim for money damages, and thus are essentially equitable attachments. One particular one that I think deserves discussion here is the Franz case, due to its similarity to this case. The Franz case involved a fact pattern very similar to this one. In Franz, a limited partner brought an action against a general partner and the chief operating officer of a partnership, alleging breach of contract and breach of fiduciary duty, after the partnership sold vacant lots at below fair market value to an entity affiliated with the chief operating officer. So the partnership is depleting partnership assets by selling vacant lots to an entity that's affiliated with one of the partners for less than fair market value and less than the price stated in the partnership agreement. So the limited partner sues and says, that's a breach of your fiduciary duty, and that's a breach of contract. And I want an injunction stopping the partnership from selling those lots. The trial court granted the plaintiff an injunction stopping the defendants from selling any further lots in order to protect the plaintiff's financial interest in the lots. The second district reversed the trial court, holding that the limited partner's breach of contract and breach of fiduciary duty suit for money damages constituted an adequate remedy of law, and thus there was no irreparable harm. In addition, the second district rejected the plaintiff's argument that the injunction did not concern a financial interest because it concerned the partnership assets, which were real estate. As the court stated, the plaintiff's entitlement based on the partnership agreement is to the profits in the partnership, not an interest in the real estate. The complaint alleges financial injury to the plaintiff by the defendant's conveyance of lots at a price less than set forth in the partnership agreement. Because the only relief requested by the plaintiff is monetary, injunctive relief is inappropriate and resembles a prejudgment attachment. Here, the defendants are trying to basically do the same thing that the plaintiffs are trying to do the same thing that the plaintiff did in Franz. They're trying to recast their complaint as one for diminution in a corporate asset or interest. But just as the Franz plaintiffs were trying to recast their complaint as one for diminution in the partnership assets. But in both cases, what the plaintiffs are really seeking is monetary damages. They're seeking redress for financial harm. And as Franz and many other cases in other contexts point out, that is no basis for an injunction and is essentially an illegal equitable attachment. And that brings me to my next point on the appeal. The injunction is basically an end around Illinois' attachment statutes. Illinois has a statute that covers what Snyder seeks. One that forces the defendant to set aside money or other property prior to judgment. And that's 735 ILCS 5 slash 40101. It's the prejudgment attachment statute. But of course, that statute requires Snyder to post a bond to provide the defendant a remedy in case the attachment is wrongful. It forces Snyder before depriving the defendant of property that was in his control to put a little skin in the game himself. He's got to post a bond. He hasn't done that in this case and yet the injunction issued. So the injunction has just done an end around the attachment statute and constitutes an illegal equitable attachment. The final point on appeal is the injunction is erroneous because it fails to preserve the status quo. The status quo is defined as the least peaceable uncontested status between the parties. That point was the 521 email from Snyder to Rooksby stating that carbon recovery wasn't going to be making any more payments to anyone. At that point, carbon recovery certainly didn't have a receivable from Peabody Coal or SIPC or anyone else for transactions after 521. But the injunction changes that. It forces Rooksby to deposit money into the court. And so the injunction does not preserve the status quo. So in summary, the injunction is erroneous because there was an adequate remedy of law, it was an end around the attachment statutes, and it failed to preserve the status quo. And against these pretty straightforward in my mind clear arguments that the injunction was improper, Snyder makes just a few arguments which in my opinion are fairly easily dispatched. First, he attempts to distinguish the Franz case because this case involves a derivative, a Snyder suit individually and derivatively on behalf of the corporation. But that's just a distinction without a difference because the derivative claim is also for money damages and therefore is an adequate remedy of law for whatever diminution in the corporate interest is being alleged. He also attempts to compare this case to the Bowman case. But the Bowman case involved a uniform fraudulent transfer act. It was a case under a different statute and not an attachment law. And any comparison to this case with attachment statute court cases, it fails because Snyder did not post a bond. Finally, Snyder argues that there is an exception to the rule against equitable attachments based on the specific funds doctrine when the injunction involves the specific fund at issue in the lawsuit. However, this is clearly not a specific fund case. First and foremost, even a trial court stated that the basis for its injunction was not the specific fund doctrine. It was not enjoining the use of or ordering deposit of specific funds. If the trial court didn't believe that this order was going out and attaching the specific funds, how can Rooksby claim that? Secondly, there was no evidence that Rooksby still had any of the specific funds from transactions in his possession. And of course, it's their burden on their injunction to prove that, and they did not. Thirdly, the order doesn't refer to a specific fund. It generally describes net sales proceeds from all coal transactions Rooksby engaged in after May of 2015. A net sales proceed is not a specific fund. It's not a specific check with a check number or money sitting in a trust account. It's a calculation of net profit after overhead. There isn't one case in the jurisprudence of Illinois that holds that someone's net profit after a calculation of overhead based on transactions is a specific fund that can be attached. And indeed, the cases Snyder cites for this argument are in a posit and have been criticized. Snyder relies heavily on all seasons excavating. However, all seasons stands for the proposition that if the defendant is insolvent and he only has one or two assets left in the real estate, the court adjoins the sale of the real estate based on the finding of insolvency. I would also point out that the injunction in all seasons excavating was directed to specific real estate and preserved the status quo, neither of which this injunction does. Snyder also cites a case called Amrae Insurance. But in Amrae Insurance, there was a reinsurance contract that was at issue, and both parties owed payments under the reinsurance contract. And the question in the case was going to be whether the reinsurance contract was valid or not and whether it should be rescinded. And the court ordered that both parties make the payments that they were supposed to pay to each other under the contract, to pay those into the court as the question of whether the contract was valid was being litigated. So in that case, both parties made deposits. And since the funds were specifically earmarked as their payments under the contract, they were clearly specific funds for that contract. They weren't net sales proceeds for six months' worth of transactions. Finally, I'd cite the Keeshan case. The Keeshan case involves a case where money was already in trust. The parties had agreed prior to the lawsuit to put money in trust. Then the dispute broke out about that trust account, and the court adjoined the use of the proceeds in the trust account. So it's a pure application of a specific fund doctrine. In short, none of these cases support the specific fund theory that Snyder has alleged. The injunction is erroneous for the reasons that I've stated, and I will reserve further argument until my reply time unless there are further questions. All right. Thank you, counsel. Thank you. Argument for the apple each. Good morning, Justice Goldenherz, Justice Schwarm, and Justice Stewart. My name is Sandra Titoyen. May it please the court. I represent Plaintiff Appellee Gregory Snyder. This court is to decide today whether the trial court abused its discretion. That's the standard of review today. Did the court abuse its discretion when it enjoined Mr. Rooksby from further dissipating 50% of the whole proceeds? And whether it abused its discretion when it ordered that that same 50% be deposited into Mr. Rooksby's attorney's trust account? After considering the evidence that was introduced at the hearings, the motions, the arguments, the case law, and the trial court's own analysis and application of that, it's very clear that the trial court did not abuse its discretion for the reasons that the court found that the documented evidence that was introduced tended to show that the proceeds from the sale of the coal were a carbon recovery asset. That's what the court was preserving was a carbon recovery asset. It was not taking away money from Mr. Rooksby. It was preserving an asset that Mr. Snyder and carbon recovery had an interest in. Second, the preliminary injunction was not tantamount to a pre-judgment attachment because, again, this was a carbon recovery asset, not Mr. Rooksby's asset. And third, there was no error because the injunction involved specific funds that are the subject of the litigation. And I just wanted to highlight a few facts I think were kind of left out or glossed over. At the hearing, at the first hearing on our motion, which was the October 22nd hearing, was our original motion for preliminary injunction. At that hearing, we introduced six different documents. One was the purchase order from Southern Illinois Power Co-op, and it was given to General Waste Services. In case you're not clear who General Waste Services is, that was an agent of carbon recovery because General Waste Services held the insurance. And that's not disputed. So General Waste Services was used by carbon recovery in order to gain access to Southern Illinois Power Co-op. So that was one document. And, again, like I said, it was a vendor agreement where General Waste Services was to supply coal to Southern Illinois Power. And it was a long-term agreement. It wasn't just for a period of time. Second, we introduced Greg's Truck Services invoices. And those invoices all identified the coal that was delivered from Kinder Morgan's facilities to Southern Illinois Power Co-op, and it identified General Waste Services on that as well. We introduced four different access agreements. There was a series of access agreements, some that terminated, some that extended the time between General Waste Services and Kinder Morgan. And those access agreements is what allowed General Waste Services to even access Kinder Morgan's properties to remove the coal. At that time, Mr. Brooksby, I believe, introduced the Peabody Coal Contract. At the re-hearing, so Mr. Brooksby's attorneys filed a motion for re-hearing, and at the re-hearing, we further introduced truck scale receipts. So when the coal was delivered to Southern Illinois Power Co-op, a truck scale receipt was issued to the driver of the truck, and that also identified General Waste Services. This is for the same period of time. Let me just ask a question, and the things you're talking about now go to liability and more or less of whether an injunction should have been entered at all. But what I heard your opposing counsel say is he's not even appealing that. He, I guess, agrees, and he can correct me if I'm wrong here when he gets back up. He agrees that I guess there was sufficient evidence to enjoin his client from further sales and so forth. Right. He's only complaining about having to put the money up. Right. Right. And our point there is that, again, he's claiming that the money held is Mr. Brooksby's assets. And I'm not trying to stop you from making your argument, but I guess my point is, and I read in the briefs, and there was a lot on both sides about whether or not there really was, whether or not the plaintiff showed a likelihood of success on the merits more or less, whether it was reasonably likely that he'd be successful and so forth. Right. It sounds to me like it doesn't matter if they're really not even appealing that issue. And they're not asking that the injunction be wiped out completely. No, they're not. It's only putting up the money. They're not. It's about putting up the money. Right. And the money that they're claiming they put up that they think that they shouldn't have to because it was Mr. Brooksby's money that the court took away as an equitable attachment would. It takes away a person's property in hopes that you're going to get a judgment. But that's not what the trial court here found. And that's why I was going through that evidence because the trial court went through a very lengthy analysis about this and said that the evidence overwhelmingly showed that those sale proceeds were a carbon recovery asset. How else can we, what other remedy do we have besides an injunction to enjoin Mr. Brooksby from further dissipating a carbon recovery asset because he had it, didn't tell us, our allegations are that he diverted the funds to him, but that it's a carbon recovery asset. That's what we've always contended. Did you ask for that other remedy in the alternative to not dissipate the corporate assets? Yes. And that's exactly what the court says, that he is to stop further dissipating 50 percent of the net sale proceeds because the court found that it was a corporate asset. And then to deposit that. And the gross proceeds of the sales were something like $400,000. Right. And within four months. Or down to $10,000. Within four months. Yeah. So the court invited, we didn't know at first how much he had actually received because we couldn't get that out of him, that information out of him. So the court also asked for an accounting. And at the second hearing in November, the November 16th hearing, which we also have the report of those proceedings, then he presented at the end of that hearing an accounting that showed that he made about $312,000. And within four months, or less than four months, he had spent or gone through almost $300,000, and there was only $20,000 left. So it was that $20,000 fee that they acknowledged through that accounting that they still had, that the court decided was a corporate asset. That's only 50% of that was held there and asked to be deposited. Just from further dissipation. And it was held in their attorney's trust accounts. The court didn't feel a bond was necessary because that essentially acts as the protection that a bond would have. So if we're wrong in the end, after a trial in the merits, it can be returned to Mr. Rooksby and there's no harm. Okay. So just let me get back up again and make sure I understand. So when you're talking about this was all done through Waste Services. Yes. That's because the contract with Southern Illinois Power Cooperative required that it go through Waste Services. Exactly. And he didn't present any new contract that provided anything else, and so that's evidence that he was more or less playing off of the carbon recovery name to make this sale. Exactly, Your Honor. Okay. That's exactly right, Your Honor. That's your point there. Yes, yes. Let me try to get back on track. Yeah, so I've highlighted the facts that I wanted to highlight, and, again, the court felt that by depositing the money into Mr. Rooksby's own attorney's account, which is essentially an insurance capacity, that the parties would be protected and the need for a bond would be unnecessary. As Your Honor pointed out, Mr. Rooksby did not produce a separate purchase order. He did not produce access agreements with Kindle Morgan. The Peabody contract, so it happens, only was from July 9th and terminated on July 31st. There's nothing that extended that Peabody contract, and the Greg's truck service invoice actually reflects pull deliveries through the month of August. I'm sorry, through what? Through the month of August 2015, as well as the truck sale receipts. So our first argument, that plaintiff is entitled to an injunction to preserve a company asset, and in order to obtain an injunction, Mr. Steiner did need to establish the four criteria, a clearly ascertainable right that needs protection. The appellant doesn't dispute that. I don't think he raised that in his appeal. But even in the event that he did, carbon recovery clearly had an ascertainable right, and Greg Steiner, as a member of carbon recovery, clearly had an ascertainable right that needed protected, that being the assets of the company. An irreparable injury that would result in the protection of an injunction is the second criteria, and the proceeds from the sale of coal for carbon recovery, that was their only source of income at the time. It still is. Without an injunction in place, Mr. Rooksby would be allowed to further dissipate the little bit that's remaining, and we would still have to sue for a money judgment. But the court is allowed to allow the court has the authority to allow us to protect our assets. For instance, you have a winning lottery ticket. You've lost it. Someone picks it up and turns it in, and do you have to wait until they spend the money or to get a money judgment against them for it, or can you go in and ask the court, stop them from spending all that money, preserve it so that it's still there? It's their asset. Then that's akin to the specific funds doctrine. And I disagreed with Judge Harrison when he did make the comment during his lengthy analysis that this was not a specific funds. I disagree with that. I believe that this is specific funds because it relates specifically. We're only looking at the sale proceeds that SIPC paid for the poll delivered for the time asserted. And those specific funds are part of the controversy here, that we're saying that he's dissipating them, that they're carbon recovery assets, and they're specifically related to the case. And in those circumstances, then the court is allowed to attach or to enjoin the use of those specific funds. And those were comments made by the trial court judge regarding the specific funds? Yes, because I did assert that. As opposed to, it's not in the order for preliminary injunction. Right, that's correct. It was comments during his analysis as to why he reached the conclusion that he did. And, Your Honor, I'd also like to point out that the court took into consideration, he very narrowly limited this injunction. He took into consideration Mr. Rooksby's interest as a 50% member of carbon recovery, and that's why he only ordered 50% of the proceeds be deposited into the account. So he took the strictest and narrowest approach that he could that would favor an equitable result. I didn't agree. I wanted more deposited in. But the court also acknowledged that if that's all that's left of it, $20,000, well, then you are stuck with getting a judgment for the balance. Your Honor, I was looking into the criteria and going through the criteria for an injunction, and there has to be an absence also of an adequate remedy of law. And, as I stated before, there's no other remedy of law that can be utilized to continue to preserve an asset that's still there. We know that there was $20,000 left. What other remedy can we have to preserve that asset that carbon recovery clearly has an interest in? The fourth criterion, the likelihood of success in the merits, was evident from the trial court's finding that the documented evidence tended to show that the proceeds from the sale of the coal was an asset of carbon recovery. Getting to my second point, Your Honor, the preliminary injunction was not an equitable attachment. I touched on this earlier. An equitable attachment, it consists of an injunction prohibiting a party from transferring or using his or her own property. That's not what the court did here. The court found that the evidence showed that it was not Mr. Rooksby's property, that it was a carbon recovery property. So the carbon recovery, so the court was preserving and protecting carbon recovery's property, not taking away Mr. Rooksby's property. And I agree with Mr. Petrie that an equitable attachment, you know, is an attempt by a party to get around the statutory requirements for a pre-judgment attachment. If this were an equitable attachment, that is true. But as I stated before, it's not an equitable attachment because we're not taking away something that he owned. Further, the pre-judgment attachment statute, under those factors, there's 11 enumerated that allows you to get a pre-judgment attachment. There's no error for the court attaching these certain proceeds because we would have been entitled to a pre-judgment attachment had it gone that way. Because Mr. Rooksby is, there's no dispute that Mr. Rooksby is an out-of-state resident. That's one of the enumerated cases for a pre-judgment attachment. But you would have had to post a bond. And, Your Honor, a bond has been subsequently, and it's not for the record because it happened. Then we can't take it. Yeah, you can't take it. Okay. But yeah, you're correct in that bond is in case, you know, that they're wrong. But the bond is also attached or used before you're allowed for a hearing, entitled to a hearing. So it's when the court goes or the person goes and seeks an attachment without the defendant, without giving notice to the defendant, and the court does require a bond. Here, the defendant had notice. We had a hearing on it, and the court decided a bond was not required, first because of the minimal amount that was deposited, and second because it was deposited into Mr. Rooksby's own attorney's trust account. Here, in the case of Franz V. Calico Development Corporation that is cited by the appellant, it is distinguishable from this case. In that case, the court specifically found that the plaintiff, who only sought monetary relief against the defendant for breach of contract, didn't have an interest in the property that the plaintiff sought to enjoy. And the court found in that case, where the plaintiff didn't have an interest in that property, the court found that it was tantamount to an equitable attachment. In this case, it's different from this case, distinguishable from this case, because here again, the court found that the asset belonged to Carbon Recovery, at least that the evidence that was presented at the time tended to show that it was a Carbon Recovery asset, and that Carbon Recovery had an interest in the asset. Here, my third and final argument was that the specific funds doctrine applies, and I touched on this as well. So even if the court were to find that it was tantamount to an equitable attachment, we have always maintained that the specific doctrine fund applies. The funds at issue in the case have specific connection to the underlying dispute, and although the trial judge did comment in his analysis that he didn't agree with that, we respectfully objected to that and disagreed with the judge and explained why we thought it was a specific funds doctrine. Case law in Illinois is clear where the funds, which are the subject of the injunction, are also the subject matter of the litigation, as they are in this case. The issuance of an injunction is valid. It has been held that the existence of a remedy at law does not deprive equity of its power to grant injunctive relief. So the fact that plaintiff's ultimate relief may be a money judgment does not deprive a court of equity of the power to grant a preliminary injunction. And we do cite All Seasons Excavating v. Flat Heart, which did not specifically find that they were entitled to it because of the insolvency. It was, again, a specific funds doctrine. Keeshan v. Schultz, where the preliminary injunction restrained payment of escrow agent to a trust was proper to maintain the property in controversy. And in remarriage of Davenport, where the ex-wife, the court found the ex-wife was entitled to a preliminary injunction preventing the ex-husband from dissipating expected proceeds from the sale of family property that she had no interest in. All are examples where the parties seeking the injunction had other remedies of law, but injunctions were upheld because it preserved the funds in controversy. During the hearings on the original motion for preliminary injunction, the motion for hearing, again, the documents were introduced, and we contended in the court agreed that it tended to show that this was a carbon recovery asset. So the specific funds are at issue in the litigation, and the specific funds are part of the injunction. For all the foregoing reasons, Your Honor, the plaintiff, Gregory Snyder, individually and directly on behalf of Carbon Recovery, prays that the court affirm paragraphs B and C of October 26, 2015, in order for a preliminary injunction and nothing further, Your Honors. All right. Thank you, counsel. Thank you. Thank you, Your Honors. There was evidence that the coal that was traded subject to May 21, 2015, was the Peabody coal, and that it was a different type of coal than SIPC had allowed them to go in and process. And so the kind of allegations they're casting upon me here aren't taking into account the full evidence that was placed in the record at the hearing. More importantly, the question here, they're saying, look, it's a carbon recovery asset. It's a carbon recovery asset. But that's the question for the suit. That is the question for the actual trial here. At the end of the day, whether it's a carbon recovery asset or whether it was our asset, whether it was Rooksby's asset, that's the final question on the trial. But most importantly, it is still just financial harm. It's still just a suit for money damages. What they're alleging as being their asset is still just a financial asset. And so they have a suit for that. There was, and that's why the finding, there's no finding of bankruptcy or insolvency. The alleged, there is no irreparable harm because it's still a financial asset, and there's been no finding that he can't otherwise pay even were it a corporate asset. And the important thing to look at there is the Franz case. In the Franz case, the real estate that was at issue was undisputedly a partnership asset, undisputedly a partnership asset. Yet the court would not enter, the appellate court reversed the trial court's injunction using the reasoning, the trial court used the reasoning, well, if these lots are sold, there's going to be a depletion of the partnership assets. The appellate court said, the second district said, look, even though they're partnership assets, it doesn't matter because it's still just a financial interest that they're trying to vindicate, and there's an adequate remedy at law for that. And so this is kind of a shell game. They say, oh, it's a corporate asset, therefore you can put an injunction on it. We say, no, it's our asset. Of course, that's the final question at trial. That's the final question at trial. But more importantly, whether it is a corporate asset, whether it is Rutzke's asset, it's a financial harm, and they have an adequate remedy at law. And that's why the attachment law doesn't require that it be your property. It requires that you be in possession of the property as we were. We were in control of the monies. We had made the sales. We were in control of it. That was deprived by this injunction. And so the question of whose it is is not really the question for the injunction. The question is, is there an adequate remedy at law to vindicate the alleged wrong? And here there is. Just let me make sure I'm correct on this. You're appealing both paragraphs B and C of the order. B is a don't dissipate, otherwise spend 50% of the net sale proceeds paid to your client. And C is deposit one-half of the net proceeds. We didn't use 50% but said one-half. We're talking about the same money. It was like, well, don't dissipate, but I'm going to go further than that. I want you to deposit the $10,000 in the bank. Or in the ---- We're talking about the same money. There's net sales proceeds, and I believe 50% he's ordered not to dissipate, and 50% he's told to put in trust. Well, and later the judge said $10,000. $10,000 is in trust. But there's still a dispute about whether or not that is actually half of what's left, I guess, isn't there? I mean, I assume the plaintiff's claiming there ought to be more than that left or whatever. I suppose. They're not bound by that. The counsel said that in the argument. Well, my question is, is the 50% of the net sale proceeds referenced in paragraph B the same amount as referenced in paragraph C, which is to be deposited in the trust account? I believe so. I believe so. I'd have to double-check the record on that one. All right. Please proceed. Okay. And there was a lot of talk about the standard of review being abuse of discretion. Well, in the Frans case, again, the case that reads right on this case, the standard of review is abuse of discretion for enjoining the sale of those lots. And the court held, yes, it's an abuse of discretion when a person ---- You can finish your sentence. It is an abuse of discretion when a person has an act of irregular law to enjoin the sale. Thank you, counsel. Thank both of you for your briefs. Your arguments will take this case under divide.